UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA

AT BECKLEY

ESTATE OF LORA MAE BURNS,
by and through,
REBECCA VANCE,
as Administratrix of the Estate of Lora Mae Burns,

        Plaintiffs,

v.                                        CIVIL ACTION NO. 5:18-cv-00888

DR. STEPHEN M. COHEN,

        Defendant.

**MEMORANDUM OPINION AND ORDER**

Pending is Defendant Dr. Stephen M. Cohen's motion in limine to exclude certain medical expenses [Doc. 65] and the Estate of Lora Mae Burns (the "Estate's") motion in limine to exclude certain expert testimony [Doc. 68].

**I.**

Dr. Cohen seeks to exclude "written-off' or "adjusted" medical expenses from consideration at trial [Doc. 81 at 1]. Under West Virginia Code § 55-7B-9d, "[a] verdict for past medical expenses is limited to: (1) [t]he total amount of past medical expenses paid by or on behalf of the plaintiff; and (2) [t]he total amount of past medical expenses incurred but not paid by on or behalf of the plaintiff for which the plaintiff or another person on behalf of the plaintiff is obligated to pay" (2017). Inasmuch as written off or adjusted medical expenses are not actually paid or owed by Ms. Burns or anyone on her behalf, Dr. Cohen contends they should be excluded at trial.

Opposing the motion, the Estate contends that the subject expenses are governed by West Virginia Code § 55-7B-9a. Section 55-7B-9a allows for a post-trial adjustment of a verdict for "collateral source payments" received by the plaintiff. The Medical Professional Liability Act ("MPLA") defines "collateral source" as "a source of benefits or advantages for economic loss that the claimant has received" from specified contracts or public programs. *Id.* § 55-7B-2(b). Specifically excluded from the definition of "collateral source" payments are "any amount that a group . . . or health care provider agrees to reduce, discount or write off of a medical bill." *Id.*

Section 55-7B-9d limits the verdict to amounts paid or owed; section 55-7B-9a correspondingly allows for a subsequent adjustment of the verdict for collateral source payments. The MPLA makes explicit that written off or adjusted medical expenses are not collateral source payments by excluding the former from the definition of the latter. *See* W. Va. Code § 55-7B-2(b).

In deciding a similar motion, my colleague Judge Chambers -- the longest serving Speaker of the West Virginia House of Delegates -- concluded that the post-trial adjustment for collateral sources "does not limit or usurp" the statutory pronouncement that a verdict be limited to the medical expenses actually paid or owed. *See Goodman v. United States* No. 3:16-cv-5953, 2018 WL 3715740, *10 (S.D. W. Va. Aug. 3, 2018). So reasoning, Judge Chambers excluded at trial those medical expenses in excess of the amounts paid or owed. *See id.*

Inasmuch as written off or adjusted expenses are neither paid nor obligated to be paid by Ms. Burns or anyone on her behalf, they cannot be considered damages at trial under the plain language of the MPLA. *See* W. Va. Code § 55-7B-9d ("A verdict for past medical expenses is limited to: (1) [t]he total amount of past medical expenses paid by or on behalf of the plaintiff; and (2) [t]he total amount of past medical expenses incurred but not paid by on or behalf of the plaintiff for which the plaintiff or another person on behalf of the plaintiff is obligated to pay.").

## II.

Also pending is the Estate's motion to exclude the expert testimony of Dr. John J. Thomas. Per Dr. Cohen's disclosure pursuant to Federal Rule of Civil Procedure 26(a)(2), Dr. Thomas is an expert in general surgery expected to testify regarding the standard of care, causation, and damages [*See* Doc. 82-1]. Specifically, Dr. Thomas opines that the White Sulphur Springs Center ("WSSC") and Dr. Ragsdale, caring for Ms. Burns upon her discharge from the hospital following the percutaneous endoscopic gastrostomy ("PEG") tube procedure, should have referred Ms. Burns to the emergency room upon learning the tube had been removed [*See id.* at 6]. Accordingly, Dr. Thomas is expected to testify that Ms. Burns's death was partially or entirely attributable to the WSSC's and Dr. Ragsdale's failure to immediately refer Ms. Burns to the hospital.

The Estate cites two bases to exclude the expert testimony of Dr. Thomas [*See* Doc. 82]. First, the Estate contends that Dr. Thomas's testimony is irrelevant under a "loss of chance" theory of recovery [*See id.* at 4-5]. The Supreme Court of Appeals defined the "loss of chance" theory in *Thornton v. CAMC, Etc.*, 172 W. Va. 360, 305 S.E.2d 316 (1983), as follows:

> Where a plaintiff in a malpractice case has demonstrated that a defendant's acts or omissions have increased the risk of harm to the plaintiff and that such increased risk of harm was a substantial factor in bringing about the ultimate injury to the plaintiff, then the defendant is liable for such ultimate injury.

*Thornton*, 172 W. Va. at 361. In 2003, the Legislature codified the "loss of chance" theory in the MPLA:

> If the plaintiff proceeds on the "loss of chance" theory, i.e., that the health care provider's failure to follow the accepted standard of care deprived the patient of a chance of recovery or increased the risk of harm to the patient which was a substantial factor in bringing about the ultimate injury to the patient, the plaintiff must also prove, to a reasonable degree of medical probability, that following the accepted standard of care would have resulted in a greater than twenty-five percent

3

>chance that the patient would have had an improved recovery or would have survived.

W. Va. Code § 55-7B-3(b).

Relying on the language in *Thornton* and section 55-7B-3(b), the Estate contends that "only the care Dr. Cohen gave to Ms. Burns on December 15, 2015 [sic] is in question" and "[n]o other evidence as to any negligence by a third party after Dr. Cohen's treatment is relevant to this action" under a loss of chance theory [Doc. 82 at 4-5]. But the Estate has not triggered liability under a loss of chance theory as a matter of law. To do so, the Estate must establish that Dr. Cohen deviated from the accepted standard of care, that the breach increased the risk of harm to the patient which was a substantial factor in the death of Ms. Burns, and that following the established standard of care would have resulted in a greater than twenty five percent chance that Ms. Burns would have survived. *See* W. Va. Code § 55-7B-3(b). The Estate did not move for summary judgment on this basis, nor has it proffered evidence sufficient to impose loss of chance liability upon Dr. Cohen as a matter of law. Absent evidence sufficient to trigger loss of chance liability as a matter of law, Dr. Cohen is entitled to counter it by introducing evidence of negligence attributable to Dr. Ragsdale and WSSC. Expert opinion testimony in that vein is not prohibited as a matter of law by W. Va. Code § 55-7B-3(b).

Second, the Estate contends that Dr. Thomas "should not be allowed to testify as an expert in geriatric medicine or nursing home care because he was not identified as an expert in said fields" [Doc. 82 at 5]. Dr. Cohen disclosed Dr. Thomas as an expert in general surgery pursuant to Federal Rule of Civil Procedure 26(a)(2) on February 8, 2019 [Doc. 82-1]. In the disclosure, Dr. Thomas "expected to testify regarding standard of care, causation and damages" [*Id.*]. Attached to the disclosure is a report in which he states, in pertinent part, "[i]n my opinion, it was reasonable for Dr. Cohen to believe that in the event of PEG tube dislodgment, the nursing

4

home would contact Dr. Cohen. Further, after the PEG tube was dislodged at White Sulphur Springs Center, Dr. Cohen should have been informed of this fact" [*Id.* at 6].

The Court discerns no defect in Dr. Cohen's Rule 26(a)(2) report given this expected testimony. Assuming the disclosure was nevertheless deficient, our Court of Appeals has prescribed the following factors for determining whether a nondisclosure of evidence is substantially justified or harmless under Rule 37(c)(1):

> (1) the surprise to the party against whom the evidence would be offered; (2) the ability of that part to cure the surprise; (3) the extent to which allowing the evidence would disrupt the trial; (4) the importance of the evidence; and (5) the nondisclosing party's explanation for its failure to disclose the evidence.

*Southern States Rack & Fixture, Inc. v. Sherwin Williams Co.*, 318 F.3d 592, 597 (4th Cir. 2003). The Estate cannot claim surprise. Dr. Thomas disclosed this opinion in his February 8, 2019, report and during his deposition on September 23, 2019. This same consideration effectively nullifies any concerns otherwise raised by factors two, three, and five. The fourth factor weighs decidedly in Dr. Cohen's favor, inasmuch as the testimony is important to Dr. Cohen's theory that Dr. Ragsdale and WSSC are partially or primarily at fault for Ms. Burns's death.

The Estate is, of course, free to challenge at trial Dr. Thomas's qualifications in the areas of geriatric medicine or nursing home care. The Court, however, concludes that Dr. Thomas's testimony is not barred based upon a deficiency in substantive disclosure or timeliness.

### III.

Accordingly, Dr. Cohen's motion in limine to exclude certain medical expenses **[Doc. 65]** is **GRANTED** and the Estate's motion in limine to preclude certain expert testimony **[Doc. 68]** is **DENIED**.

The Clerk is directed to send a copy of this Memorandum Opinion and Order to all counsel of record and any unrepresented parties.

ENTERED: June 17, 2020

Frank W. Volk
United States District Judge